IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

JOHN N. STRANGE                                                                                             PLAINTIFF

   v.                              CIVIL NO. 14-2093

CAROLYN W. COLVIN, Acting Commissioner
Social Security Administration                                                                    DEFENDANT

**<u>MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION</u>**

   Plaintiff, John Strange, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for a period of disability, supplemental security income ("SSI"), and disability insurance benefits ("DIB") under the provisions of Titles II and XVI of the Social Security Act ("Act"). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I. Procedural Background**

   Plaintiff protectively filed applications for DIB and SSI on July 14, 2011, alleging disability since May 12, 2011, due to: "bad back, seizures, bipolar disorder, PTSD, anxiety, depression, high blood pressure, sleep apnea, diabetes, and breathing problems." (Tr. 19, 224, 228). For DIB purposes, Plaintiff retained insured status through December 31, 2011. (Tr. 21, 174, 224). An administrative hearing was held on October 19, 2012, at which Plaintiff appeared with counsel and testified. (Tr. 35-62).

   By a written decision dated January 21, 2013, the ALJ found Plaintiff had the following severe impairments: "back disorder (chronic back pain syndrome); hypertension; diabetes mellitus

(non-insulin dependent); asthma; bipolar disorder (depression/anxiety/post traumatic stress disorder); and organic brain syndrome (with seizures resulting from alcohol dependence and methamphetamine abuse)." (Tr. 21). After reviewing all of the evidence presented, the ALJ determined Plaintiff's impairments did not meet or equal the level of severity of any impairment in the Listing of Impairments. (Tr. 22-25). The ALJ found Plaintiff retained the residual functional capacity ("RFC") to perform light work except:

> the claimant can frequently lift and/or carry ten pounds and occasionally twenty pounds, sit for a total of six hours in an eight hour work day, and stand and/or walk for six hours in an eight hour work day. The claimant must work in a controlled environment without exposure to heights or dangerous machinery. The claimant can perform unskilled work involving simple tasks requiring simple instructions. (Tr. 25)

With the help of a vocational expert ("VE"), the ALJ determined Plaintiff could not perform his past relevant work ("PRW"), but could perform the representative occupations of warehouse clerk, mail clerk, and hand packager (shoe packager). (Tr. 28-29, 70-78). The ALJ then found Plaintiff had not been under a disability as defined by the Act during the relevant time period. (Tr. 29).

Plaintiff next requested a review of the hearing decision by the Appeals Council, which denied the request on March 8, 2014. (Tr. 1-4). Subsequently, Plaintiff filed this action. (Doc. 1). Both parties have filed appeals briefs, and the case is before the undersigned for report and recommendation. (Docs. 9, 12).

**II. Evidence Presented**

The evidence before the relevant time period includes the report of Dr. Christopher Bauer, a VA psychiatrist, who examined Plaintiff on October 21, 2010. (Tr. 702-711). Plaintiff told Dr. Bauer he was in constant pain, had memory problems, and struggled to maintain his prescription

regimen. (Tr. 706). Plaintiff also indicated he attempted suicide in 2003 by single vehicle crash and in 2004 by methamphetamine overdose. (Tr. 706). Dr. Bauer mentioned Plaintiff loudly ground his molars and walked with a pronounced limp while using a cane. (Tr. 705-706). His exam was "notable for anterior cerebellar dysfunction." (Tr. 706). According to Dr. Bauer, Plaintiff had an a IQ of 95, exhibited normal insight, had a depressed mood, showed cognitive weakness in aspects of attention and concentration, and had mild verbal/visual memory weakness. (Tr. 709). Dr. Bauer opined Plaintiff's results were consistent with chronic alcohol and drug abuse and suggested Plaintiff should not drive because of his seizure diagnosis. (Tr. 709-710).

The evidence during the relevant time period is the following. Plaintiff was treated at the ER on May 18, 2011, for an abscessed molar. (Tr. 398-403). His exam was otherwise normal and he was discharged with a prescription for amoxicillin. (Tr. 401-403).

Plaintiff met with VA social worker, Tori Harris, for a mental health follow-up on June 7, 2011, and reported he was "doing okay," and planning to work at a fireworks stand for the third year in a row during the holiday season. (Tr. 344, 347). He complained of pain from a mouth condition he characterized as "meth mouth," and indicated he had started smoking again as well as using marijuana. (Tr. 347). Ms. Harris assessed Plaintiff's Global Assessment of Functioning ("GAF") as a 45. (Tr. 350). Plaintiff also visited with VA Nurse, Stephanie Plummer, and reported he was not sleeping well, feeling more anxious, smoking marijuana again, and not seeing improvement. (Tr. 353-355). Nurse Plummer noted Plaintiff exhibited "clean clothing with good hygiene and grooming," and assessed Plaintiff's GAF as a 50. (Tr. 353-355). She continued his prazosin, sertraline, and topiramate medications, increased his trazadone medication, and prescribed hydroxyzine and busiprone for anxiety. (Tr. 355).

Plaintiff had a follow-up with his VA dietician, Ashley Wood, on June 24, 2011, who reported he was doing well and had lost significant weight by including more fruit, vegetables, and low fat milk in his diet. (Tr. 339-340).

On July 5, 2011, Plaintiff had a mental health follow-up with VA nurses, Stephanie Plummer and Bonnie Barton. (Tr. 333-339). Plaintiff reported he had spent the weekend employed at a fireworks stand and his pain level, sleep quality, and anxiety had improved. (Tr. 333, 338). Nurse Plummer assessed his GAF as a 50 and noted he appeared "casual, with good hygiene and grooming" and showed appropriate behavior. (Tr. 338). Plaintiff's prazosin, sertraline, trazadone, topiramate, and hydroxyzine prescriptions were continued and his busiprone medication was increased. (Tr. 338).

On August 2, 2011, Plaintiff had a mental health follow-up with Nurse Plummer. (Tr. 323-331). Plaintiff reported he had good energy and mood, was significantly less anxious, was not experiencing any medication side effects, his seizures were stable, and he was sleeping well. (Tr. 328-330). Plaintiff had recently met two strangers, who moved in with Plaintiff and his daughters, but he was still smoking about a quarter of a pack each day and smoking marijuana regularly. (Tr. 325, 329). Nurse Plummer noted Plaintiff's "symptoms are now stable and he feels he is doing well." (Tr. 329). Nurse Plummer also reported he had appropriate behavior and hygiene, and his GAF was a 50. (Tr. 328-329). Plaintiff's prazosin, sertraline, trazadone, topiramate, buspirone, and hydroxyzine prescriptions were continued. (Tr. 330).

Plaintiff had a mental health follow up with Ms. Harris on August 19, 2011, and he reported his mood was "awesome." (Tr. 526). Plaintiff had recently added additional boarders to live in his

home and was doing "pretty good" on his medicine. (Tr. 526). Ms. Harris assessed his GAF as a 45. (Tr. 527).

On August 24, 2011, Plaintiff was discharged from the Diabetic Monitor Clinic based on his July A1c reading of 6.4-percent. (Tr. 523). Plaintiff had a nutritional follow-up with Tammy Hamilton on October 14, 2011, who reported Plaintiff had lost twenty-eight pounds in the last year by watching his carbohydrates and becoming physically active. (Tr. 521-523).

Nurse Plummer, identifying herself as both a doctor and a nurse in her signature, submitted a Mental Impairment Questionnaire dated August 24, 2011. (Tr. 560-565). She opined Plaintiff had a fair prognosis, but was unable to meet the competitive standards in nearly every mental category. (Tr. 560-562). For instance, Nurse Plummer indicated Plaintiff could not meet the competitive standards of: remembering work-like procedures; dealing with normal work stress; interacting appropriately with the general public; maintaining appropriate behavior; adhering to basic standards of neatness and cleanliness; or, using public transportation. (Tr. 562-563).

Nurse Plummer indicated Plaintiff had a "low IQ or reduced intellectual functioning;" marked restrictions in the activities of daily living; marked difficulties in maintaining social functioning; extreme deficiencies of concentration, persistence, or pace; and, four or more repeated episodes of decompensation within a twelve month period, each of at least two weeks in duration. (Tr. 563-564). She also suggested Plaintiff would need to be absent from work at least four days each month, that even a minimal change in mental demands would cause Plaintiff to decompensate, and that Plaintiff could not function outside of a highly supportive living arrangement. (Tr. 564-565).

Dr. Christal Janssen submitted a mental RFC assessment and psychiatric review technique dated October 26, 2011, and stated Plaintiff had a mild restriction in the activities of daily living;

moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and, no episodes of decompensation. (Tr. 432, 436-437). She opined Plaintiff "appears able to perform simple/repetitive work with incidental interpersonal contact and direct/concrete supervision, unskilled." (Tr. 428).

Plaintiff saw Ms. Harris on November 17, 2011, for a mental health follow-up and reported he was "doing pretty good, except for the pain," which he indicated was about an 8.5/10 because his back had recently popped while driving his kids to school. (Tr. 490-491). He reported he had given up marijuana and felt like his medications were effective, and his GAF was assessed as a 45. (Tr. 491-492).

Dr. Gerald Guyer, a primary care physician at the VA, examined Plaintiff on November 2, 2011, and determined Plaintiff's diabetes, hypertension, and seizures were "controlled and stable," and continued Plaintiff's lisinopril, metformin, and metoprolol prescriptions. (Tr. 503). Plaintiff indicated his back pain score was a 4/10. (Tr. 511). Plaintiff also spoke with Nurse Plummer the same day for a mental health follow-up. (Tr. 512-521). She reported that his appearance and posture had dramatically improved over the course of the year because he was no longer walking with a cane and had lost about fifty-six pounds. (Tr. 515). Plaintiff reported he had been more irritable and had suffered sleeping problems since his last visit because he had run out of his medications, but had been staying active with yardwork, housework, and caring for his pets. (Tr. 515-516). Nurse Plummer attributed Plaintiff's increased irritability and insomnia to a lapse in his medications and put a plan in place so he would not be without his medications in the future. (Tr. 518-519).

Plaintiff underwent a pulmonary consultative examination by Dr. Dennis Berner, a State consultative physician, in December 2011. (Tr. 409-412). Dr. Berner performed pulmonary function

studies, which revealed "excellent flow rates," and opined "the studies are within normal limits for both before and after bronchodilator study." (Tr. 410).

On December 29, 2011, Plaintiff was examined by Dr. Stanley Reyenga, a State consultative physician. (Tr. 413-418). Dr. Reyenga documented Plaintiff had no heart problems; had full range of motion in his extremities; walked with a normal gait; could not walk on his heel and toes or squat due to pain in his back and feet; had normal muscle strength; had normal reflexes; had 70-percent normal grip strength; had no manipulative limitations; and, showed no signs of mental problems. (Tr. 413-417). Dr. Reyenga also performed a lumbar x-ray that revealed Plaintiff's lumbar spine was within normal limits. (Tr. 417). Dr. Reyenga opined Plaintiff did not have any limitations in his ability to walk, stand, sit, lift, carry, handle, finger, see, hear, or speak. (Tr. 417).

Dr. Judith Forte, a State non-examining physician, submitted a physical RFC assessment dated December 30, 2011, and opined Plaintiff could occasionally lift fifty pounds and frequently lift twenty-five pounds; could stand, sit, or walk about six hours in an eight hour work day; had no push/pull, visual, manipulative, communicative, or postural limitations; and, should avoid moderate exposure to hazards, such as machinery and heights. (Tr. 440-444). Dr. Forte's opinion was Plaintiff could perform medium work so long as he was accommodated with seizure precautions. (Tr. 446).

Plaintiff saw VA optometrists, Matthew Willis and Lisa Rodan, in March 2012 for an eye exam. (Tr. 457-465). Plaintiff's eye exam was normal, but there were indicators of diabetic eye disease that would require monitoring and, possibly, future treatment with eye drops. (Tr. 464).

Plaintiff had a mental health follow-up with Ms. Harris on February 27, 2012. (Tr. 465-471). Plaintiff reported he was doing great, his pain level was about a 3.5/10, and his GAF was assessed as 45. (Tr. 466-468). He mentioned having a friend over for dinner, completing arts and crafts

projects, and cooking regularly. (Tr. 467). Ms. Harris remarked his "current treatment plan appears effective." (Tr. 467-468).

On April 11, 2012, Dr. James Wellons, a State non-examining physician, submitted a physical RFC assessment and affirmed Dr. Forte's opinion from December 2011. (Tr. 553). Dr. Kay Cogbill, a State non-examining physician, submitted a mental RFC assessment the same day and affirmed Dr. Jannsen's mental RFC assessment from October 2011. (Tr. 554).

**III. Applicable Law.**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

A claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require the application of a five-step sequential evaluation process to each claim for disability benefits. *See* 20 C.F.R. § 404.1520(a)-(f)(2003). Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his RFC. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920 (2003).

### III. Discussion

On appeal, Plaintiff argues the ALJ: (1) failed to adequately develop the record; (2) erred in determining Plaintiff's credibility; (3) erred in the RFC assessment; and, (4) erred in determining Plaintiff could perform work at Step Five. (Doc. 9 at 12-20).

**A. Development of the Record**

The ALJ has a duty to fully and fairly develop the record. *See Frankl v. Shalala*, 47 F.3d 935, 938 (8th Cir. 1995). The ALJ's duty to fully and fairly develop the record is independent of Plaintiff's burden to press his case. *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010). The ALJ, however, is not required to function as Plaintiff's substitute counsel, but only to develop a reasonably

complete record. *See Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995)("reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial.").

Plaintiff believes the ALJ should have obtained a physical RFC statement from a VA physician and an RFC statement from the VA's mental examiner, Dr. Christopher Bauer, who examined Plaintiff in 2010, before the relevant time period. (Doc. 9 at 12-13).

The undersigned has reviewed Dr. Bauer's report, and the ALJ's written decision, which properly addressed the report as background material. (Tr. 26, 702-710).[1] The facts in Dr. Bauer's opinion have already been addressed in a previous disability claim and should not be reopened in this one. (Tr. 116-117). Res judicata bars subsequent disability applications based on the same facts and issues the Commissioner previously found to be insufficient to prove the claimant was disabled. *See* 20 C.F.R. §§ 404.957(c)(1), 416.1457(c)(1); *Hillier v. Soc. Sec. Admin.*, 486 F.3d 359, 364 (8th Cir. 2007). Since res judicata applies, the medical evidence from the initial proceeding should not be subsequently reevaluated. *See Robbins v. Sec'y of Health & Human Servs.*, 895 F.2d 1223, 1224 (8th Cir. 1990). Dr. Bauer's opinions and records about Plaintiff in 2010 do not get controlling weight, and they are only relevant as a background to help examine if Plaintiff's conditions deteriorated since the earlier proceeding. *See Hillier*, 486 F.3d at 365 (quoting *Robbins*, 895 F.2d at 1224).

The ALJ was also under no obligation to contact Dr. Reyenga for more information since he was only a one-time examiner and there was no uncertainty about his opinion. An ALJ only needs to recontact a physician when an issue needs clarified, or if a crucial issue is undeveloped. *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005). There is no indication Dr. Reyenga was unclear or

---

[1] The ALJ attributed the report to Dr. Shari Desilva, the name next to the diagnoses on the VA's printout of the report, but the examination and report were by Dr. Bauer.

failed to develop an issue in his report. Plaintiff points out that Dr. Reyenga did not identify high high A1c levels, migraines, or severe knee pain, but the record did not establish migraines or knee pain, and VA records showed Plaintiff's diabetes and weight problems had been resolved by the time Plaintiff was examined by Dr. Reyenga. (Tr. 323-331, 503-519, 521-523).

The undersigned has carefully reviewed the record as a whole, which included many diagnostic reports, the records and statements of VA specialists, and the opinions of the State's consultative physicians, and believes it contained sufficient evidence for the ALJ to evaluate Plaintiff's disability claims. Accordingly, the undersigned finds the ALJ fully and fairly developed the record. *See e.g., Battles v. Shalala*, 36 F.3d 43, 45 (8th Cir. 1994).

### B. Credibility Determination

The ALJ was required to consider all of the evidence relating to Plaintiff's subjective complaints, including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and, (5) functional restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. *Id*. It is well established that "credibility is primarily a matter for the ALJ to decide." *Edwards*, 314 F.3d at 966. The ALJ is entitled to make a factual determination that a claimant's subjective complaints are not credible when contrary objective medical evidence exists. *Ramirez*, 292 F.3d at 581.

The ALJ addressed the *Polaski* factors in the written decision, but discounted Plaintiff's allegations of disabling pain. In addition to a lack of support in the medical record, the ALJ

identified the following inconsistencies that weighed against Plaintiff's credibility: (1) Plaintiff self-reported seizures and road rage as major problems in his life but continued to drive; (2) Plaintiff was non-compliant with medical recommendations; (3) Plaintiff did not seek treatment or take pain medication for allegedly debilitating back pain; and, (4) Plaintiff's ongoing drug and alcohol use. (Tr. 28).

These were valid reasons for discounting Plaintiff's claims and were consistent with the record. *See e.g., Wildman v. Astrue*, 596 F.3d 959, 968-69 (8th Cir. 2010) (stating ALJ appropriately considered claimant's non-compliance with prescribed treatment in determining credibility); *see also Casey v. Astrue*, 503 F.3d 687, 696 (8th Cir. 2007) (deferring to the ALJ's credibility determination where the objective medical evidence did not support claims of physical impairments).

Other evidence in the record supported the ALJ's credibility determination. Plaintiff's three years of seasonal work selling fireworks suggests he is capable of work. (Tr. 43, 344, 347); *see Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994). He still hunts and goes fishing; drives his children to school; goes to sporting events; mops the floor; mows his lawn; and, socializes with friends. (Tr. 45, 48, 100, 273, 289). These activities, considered as a whole, are not consistent with disability.

Plaintiff's only specific argument on the subject of credibility is the ALJ exercised unfair prejudice against him because of his drug and alcohol use. (Doc. 9 at 16-17). Evidence existed that Plaintiff was using marijuana and alcohol, and possibly methamphetamine, during the relevant time period, such as drinking beer to "clean his kidneys out." (Tr. 43, 327, 347, 360, 369). He was repeatedly told do discontinue his marijuana use because it affected his mental health. (Tr. 338, 347).

Plaintiff's drug and alcohol use, which contradicted his mental health providers' recommendations, was relevant to his credibility. *See Guilliams,* 393 F.3d 798, 802 (8th Cir. 2005).

Based on the foregoing, the undersigned finds the ALJ's credibility determination was based on substantial evidence.

### C. RFC

RFC is the most a person can do despite that person's limitations, and is assessed using all relevant evidence in the record. 20 C.F.R. §404.1545(a)(1). This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of limitations. *Guilliams*, 393 F.3d at 801; *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. §404.1545(a)(3). A claimant's RFC is a medical question, *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001), therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003). The ALJ is required to specifically set forth a claimant's limitations and to determine how those limitations affect his RFC. *Id.*

Plaintiff claims the ALJ did not give sufficient attention to Plaintiff's GAF scores, should have given Nurse Plummer's opinion controlling weight, and neglected to account for Plaintiff's fatigue, obesity, diabetes, high blood pressure, seizures, headaches, and chronic pain in the RFC determination. (Doc. 9 at 16-19).

The record as a whole shows Plaintiff's documented conditions were controlled with treatment and medications. VA records show Plaintiff had lost substantial amounts of weight, was walking normally, and had been discharged from the diabetes clinic because his A1c levels had

significantly improved. (Tr. 521-523). Nurse Plummer reported in August, 2011 that Plaintiff's "symptoms are now stable and he feels he is doing well." (Tr. 328-330). Dr. Guyer reported in November, 2011 that Plaintiff's diabetes, hypertension, and seizures were "controlled and stable." (Tr. 503). In February, 2012, Ms. Harris commented his "current treatment plan appears effective," and reported his pain level is low and his attitude is great. (Tr. 466-468). Conditions controlled by treatment or medications are not disabling. *Brace v. Astrue*, 578 F.3d 882, 885 (8th Cir. 2009).

The ALJ was also not required to address Plaintiff's GAF scores of 45-50 because they were assigned by Ms. Harris and Nurse Plummer, who are not acceptable medical sources. A GAF score is also only a measure of the severity of a claimant's symptoms and simply reflects a clinician's judgment of a person's overall level of functioning. *See generally Jones v. Astrue*, 619 F.3d 963, 973 (8th Cir. 2010). The Eighth Circuit has held that a "GAF score is not essential to the accuracy of an RFC determination, only that it may be of considerable help in formulating RFC." *Earnheart v. Astrue*, 484 F. Appx. 73, 75 (8th Cir. 2012). Although a lengthy history of low GAF scores indicates the existence of serious limitations, *Pate-Fires v. Astrue*, 564 F.3d 935, 944 (8th Cir. 2009), the SSA has explained that, "the GAF scale ... does not have a direct correlation to the severity requirements in our mental disorders listings." 65 Fed. Reg. 50764-765. "An ALJ may afford greater weight to medical evidence and testimony than to GAF scores when the evidence requires it." *Jones*, 619 F.3d at 974.

Although Ms. Harris and Nurse Plummer assigned GAF scores of 45-50, their reports also showed Plaintiff's medications were treating his conditions and he was doing well. (Tr. 323-331, 333-339, 344-355, 465-471, 344-355). The ALJ did not err by not specifically discussing Plaintiff's GAF scores. *See Jones* 619 F.3d at 973; *see also Howard v. Comm'r of Soc. Sec.,* 276 F.3d 235, 241

(6th Cir. 2002)(stating the failure to reference a GAF score, standing alone, does not make the RFC inaccurate). The ALJ addressed Nurse Plummer and Ms. Harris' reports and Plaintiff's mental impairments as a whole, and ultimately included nonexertional limitations that reflected Plaintiff's mental limitations.

The ALJ also correctly noted Nurse Plummer is not an acceptable medical source and not qualified to provide a medical opinion. Her opinion is also not entitled to weight for reasons other than simply not being an acceptable medical source. The significant mental impairments suggested by her opinion are not supported by the other evidence or her treatment notes. For example, Nurse Plummer consistently reported Plaintiff was doing well and exhibited appropriate behavior, but she opined in her Mental Impairment Questionnaire that Plaintiff was incapable of maintaining socially appropriate behavior or adhering to basic standards of cleanliness. (Tr. 563). She also opined in her statement he had four or more episodes of decompensation in the last year, which is not reflected in her treatment notes.

The record as a whole, including the examination of Dr. Reyenga (the State's consulting physician), the examination of Dr. Guyer (Plaintiff's treating physician at the VA), the opinions of the State's consulting physicians (who opined Plaintiff could perform medium, unskilled work), and Plaintiff's lifestyle all support the ALJ's conclusions. (Tr. 413-418, 428, 446, 553-554). Based on the foregoing, the undersigned finds that there is substantial evidence to support the ALJ's RFC findings.

### D. Step 5 Determination

At Step Five of a disability determination, the SSA has the burden of establishing that a claimant retains the ability to perform other work in the economy. *See Snead v. Barnhart*, 360 F.3d

838, 836 (8th Cir. 2004). The ALJ may meet this burden by either applying the Grids or by relying upon the testimony of a VE. The ALJ may not apply the Grids, and must hear testimony from a VE, where a claimant's RFC is significantly diminished by a nonexertional limitation. *See McGeorge v. Barnhart*, 321 F.3d 766, 768-769 (8th Cir. 2003).

> The hypothetical posed to the VE described a person as follows:
>
> I would like you to assume we have an individual who is the same age, education, and work background as the claimant. Assume further this individual were limited from an exertional standpoint to no more than light work. Assume further this individual would need to work in a controlled environment in which they were not exposed to concentrated amounts of dust, gas or smoke or temperature extremes. Assume further this individual would need to work in an environment in which they were not exposed to heights or dangerous machinery. Are there any jobs such a person could perform in the economy? (Tr. 72)

In response, the VE testified this person could perform the jobs of warehouse checker and mail clerk. (Tr. 72). The ALJ then added the additional limitation that the hypothetical person would "also need to work jobs which involve simple tasks, simple instructions." (Tr. 73). In response, the VE testified the person could still perform both jobs. (Tr. 73). The ALJ then asked a third hypothetical:

> ALJ:  Assume this person would need to be limited to jobs in which they had only incidental contact with the public. Would this compromise any of those jobs?
>
> VE:  It would not compromise the warehouse checker, but would compromise the mail clerk position, your honor.
>
> ALJ:  Can you give me another job?
>
> VE:  Yes, your honor. Another job would be ... hand packager, in particular a shoe packager ... . (Tr. 73)

VE testimony, in response to a hypothetical question, is substantial evidence if the hypothetical sets forth the credible impairments with reasonable precision. *See Starr v. Sullivan*, 981

F.2d 1006 (8th Cir. 1992). The ALJ must only include in the hypothetical the impairments which the ALJ actually finds credible, and not those which he rejects, assuming his findings are supported by substantial evidence.  *See Onstad v. Shalala*, 999 F.2d 1232 (8th Cir. 1993).

Having thoroughly reviewed the hearing transcript, along with the entire evidence of record, the Court finds that the hypothetical the ALJ posed to the VE fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. *See e.g., Rappoport v. Sullivan*, 942 F.2d 1320, 1322 (8th Cir. 1991). The VE stated jobs existed in both the national and regional economy for the vocational profile of the Plaintiff. Such testimony, based on hypothetical questions consistent with the record, constitutes substantial evidence. *See Goff v. Barnhart*, 421 F.3d 785, 794 (8th Cir. 2005).

## IV. Conclusion:

Based on the foregoing, the undersigned recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice.

**The parties have fourteen (14) days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 8th day of April, 2015.

/s/ *Mark E. Ford*
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE